IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CHESTER DUFFY** and **MICHELE DUFFY,** | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 2:19cv1490 |
| | ) | **Electronic Filing** |
| **AMERICAN GENERAL LIFE INSURANCE COMPANY, AIG CAPITAL SERVICES, INC., LPL FINANCIAL LLC, STEPHEN J. AVERY** and **PATRICK B. DEVLIN,** | ) ) ) ) ) ) | |
| Defendants. | ) | |

## OPINION

Chester and Michele Duffy ("plaintiffs") commenced this action seeking redress for alleged misrepresentations made in conjunction with the purchase of an AIG Polaris Platinum III Variable Annuity (the "Annuity"). Defendants Patrick B. Devlin ("Devlin") and Stephen J. Avery assertedly made misrepresentations in promoting the Annuity as a proper investment for plaintiffs and then reaffirmed those misrepresentations after Chester Duffy purchased the investment instrument. Presently before the court is defendants LPL Financial, LLC ("LPL Financial") and Devlin's (collectively "defendants") motion to stay proceedings and compel arbitration. For the reasons set forth below, the motion will be granted.

Defendants maintain that both plaintiffs are bound by a clause in individual account applications that were executed in order to open brokerage accounts with LPL Financial. Chester Duffy signed an application as part of the transaction resulting in the purchase of the Annuity. Michele Duffy signed an application as part of opening the couple's joint account with

LPL Financial.  These applications contained a provision that referenced an arbitration clause in the contemplated investment account and purportedly made the arbitration clause binding as to any dispute between defendants and plaintiffs.

Plaintiffs maintain that the applications did not contain the actual arbitration agreements and Chester Duffy never signed the account agreement used to purchase the Annuity.  Instead, his signature on that account agreement was forged.  Further, when Chester executed the application as part of purchasing the Annuity, Devlin failed to make him aware of any provision that would mandate arbitration in the event of a dispute between plaintiffs and LPL Financial and failed to provide a copy of the account agreement or otherwise disclose its arbitration clause. And because Chester was not made aware of the applicability of arbitration clause when executing the application and did not sign the document containing the actual arbitration agreement, plaintiffs contend the arbitration clause is not part of the parties' contract or at the very least they are entitled to discovery and a jury trial on that issue.

Whether a dispute must be submitted to arbitration "is a matter of contract between the parties" and "a judicial mandate to arbitrate must be predicated upon the parties' consent." Guidotti v. Legal Helpers Debt Resolution, L.L.C., 716 F.3d 764,771 (3d Cir. 2013) (quoting Par–Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd., 636 F.2d 51, 54 (3d Cir. 1980)). Enforcement of such contractual agreements is authorized by the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 1, *et seq.*, provided the court is "satisfied that the making of the agreement for arbitration . . . is not in issue." Id. at § 4.  "In the event that the making of the arbitration agreement is in issue, then 'the court shall proceed summarily to the trial' of that issue.'" Guidotti, 716 F.3d at 771 (quoting Par–Knit Mills, 636 F.2d at 54 (quoting 9 U.S.C. § 4)).

"[T]he party who is contesting the making of the agreement has the right to have the issue presented to a jury."  Id.

Review of a motion to compel arbitration can be undertaken pursuant to either Rule 12(b)(6) or Rule 56 of the Federal Rules of Civil Procedure.  Guidotti, 716 F.3d at 776.  Which of these applies depends on the nature of the complaint and its supporting documents.   On the one hand, "when it is apparent, based on 'the face of a complaint, and documents relied upon in the complaint,' that certain of a party's claims 'are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay.'"  Id. at 776 (quoting Somerset Consulting, LLC v. United Capital Lenders, LLC, 832 F. Supp.2d 474, 482 (E.D. Pa. 2011)).  In contrast, "if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue," then the parties are entitled to discovery on the issue of arbitrability and thereafter the issue is to be reevaluated under Rule 56 and/or summarily tried as appropriate.  Id.

As previously noted, defendants' current motion is grounded on the application Chester Duffy signed to open an account with LPL Financial for the purpose of purchasing the Annuity and Michele Duffy's signature on a separate application that was used to open the couple's joint LPL Financial account.  Those documents were introduced into the record by an affidavit and exhibits submitted in support of defendants' motion to compel.  Plaintiffs have submitted affidavits in opposition.  Thus, the inquiry on the issue of arbitrability extends beyond the face of the complaint and its supporting documents and it follows that Rule 56 supplies the governing standards of review.

3

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(A).  Rule 56 "'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Marten v. Godwin, 499 F.3d 290, 295 (3d Cir. 2007) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986)).  Deciding a summary judgment motion requires the court to view the facts, draw all reasonable inferences and resolve all doubts in favor of the nonmoving party.  Doe v. Cnty. of Centre, Pa., 242 F.3d 437, 446 (3d Cir. 2001).

The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact.  When the movant does not bear the burden of proof on the claim, the movant's initial burden may be met by demonstrating the lack of record evidence to support the opponent's claim.  Nat'l State Bank v. Fed. Reserve Bank of New York, 979 F.2d 1579, 1581-82 (3d Cir. 1992).  Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a *genuine issue for trial*," or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. Matsushita Electric Industrial Corp. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(E)) (emphasis in Matsushita).  An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In meeting its burden of proof, the "opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586.  The non-

4

moving party "must present affirmative evidence in order to defeat a properly supported motion" . . . "and cannot simply reassert factually unsupported allegations."  Williams v. Borough of West Chester, 891 F.2d 458, 460 (3d Cir. 1989).  Nor can the opponent "merely rely upon conclusory allegations in [its] pleadings or in memoranda and briefs."  Harter v. GAF Corp., 967 F.2d 846, 852 (3d Cir. 1992); Sec. & Exch. Comm'n v. Bonastia, 614 F.2d 908, 914 (3d Cir. 1980) ("[L]egal conclusions, unsupported by documentation of specific facts, are insufficient to create issues of material fact that would preclude summary judgment."). Likewise, mere conjecture or speculation by the party resisting summary judgment will not provide a basis upon which to deny the motion.  Robertson v. Allied Signal, Inc., 914 F.2d 360, 382-83 n.12 (3d Cir. 1990).  If the non-moving party's evidence is merely colorable or lacks sufficient probative force summary judgment may be granted.  Anderson, 477 U.S. at 249-50; see also Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992), cert. denied, 507 U.S. 912 (1993) (although the court is not permitted to weigh facts or competing inferences, it is no longer required to "turn a blind eye" to the weight of the evidence).

The record as read in the light most favorable to plaintiffs establishes the background set forth below.  On September 11, 2014, Chester Duffy signed an LPL Financial application which he understood would create an LPL account (the 3518 account) that would be used by LPL Financial to transfer $750,000.00 in funds (less initial fees) to AIG Capital Services in order to purchase the Annuity.  Both Chester Duffy and defendants Devlin and LPL Financial understood at that time that the account merely was the vehicle through which LPL Financial would acquire the Annuity for Chester Duffy and plaintiffs' benefit.

The receipt of the funds and the transfer of them on September 23, 2014, to AIG for the purchase of the Annuity were reflected in the initial LPL Financial statement for the 3518 account.  As of September 30, 2014, the funds were reflected as having been withdrawn from the 3518 account and the Annuity was reflected as an investment "Held Outside LPL Financial as of September 30, 2014."  Doc. No. 30-1 at p. 7.  After receiving that statement, plaintiffs did not receive any additional statements for the 3518 account.  All subsequent statements concerning the funds/Annuity were issued by AIG/American General.  Plaintiffs formed the belief that the 3518 account was closed upon the transfer of the funds or at least no longer active after September 30, 2014.

At the time the transaction was being initiated, defendant Devlin explained to Chester that the account was being opened only for the purpose of permitting LPL Financial to transfer the funds to AIG.  Consistent with Devlin's past practices, Devlin only presented the last page of the account application to Chester for his signature.  Chester signed the signature page of the application.  He was not presented with a copy of the entire application; he was not presented with a copy of the LPL Financial Master Account Agreement.  Devlin did not mention that the application and/or master account had an arbitration provision and he did not explain that by signing the document any claims plaintiffs might have against LPL Financial in connection with the Annuity would be subject to arbitration.

The application signed by Chester contained the following provision:

3. Acknowledgement

I acknowledge by signing below that I have received, read, understand and agree to the terms of this Account Application and the applicable Account Agreement (included in the Account Packet specified in Section I). Additionally I certify the following:

***

6

> This account is governed by and I acknowledge receipt of the
> predispute arbitration clause that is located in the last numbered
> section of the Account Agreement (included in the Account Packet
> specified in Section I), which is incorporated by reference into this
> Account Application.

Application for Account 3518 (Doc . No. 30-1) at § VI.3.  This acknowledgement was

followed by a penalty of perjury declaration and a line for the applicant's signature with a space

for verification of the date.  All of the above was contained in the last page of the application.

The referenced "Account Agreement" contained the following provision:

**ARBITRATION  AGREEMENT**

Disclosures

By signing this Arbitration Agreement the parties agree as follows:

(A) All parties to this agreement are giving up the right to sue each other in court,
including the right to trial by jury, except as provided by the rules of the arbitration
forum in which a claim is filed.

(B) Arbitration awards are generally final and binding; a party's ability to have a court
reverse or modify an arbitration award is very limited.
* * *
In consideration of opening one or more accounts for you, you agree that any
controversy between you and LPL and/or your Representative(s) (whether or not a
signatory(ies) to this Master account Agreement or Arbitration Agreement), arising out
of or relating to your account, transaction with or for you, or the construction,
performance, or breach of this agreement whether entered into prior, on or subsequent
to the date hereof, shall be settled by arbitration in accordance with the rules, then in
effect of the Financial Industry Regulatory Authority. Any arbitration award hereunder
shall be final, and judgment upon the award rendered may be entered in any court, state
or federal, having jurisdiction. You understand that you cannot be required to arbitrate
any dispute or controversy nonarbitrable under federal law.

LPL Master – Account Agreement (Doc. No.30-1) at p. 45.

A two-step inquiry is utilized to evaluate the enforceability of an arbitration clause in a

contract: 1) whether there is a valid agreement to arbitrate; and 2) whether that agreement

encompasses the dispute at issue.  <u>Richardson v. Coverall North America</u>, 811 F. App'x 100,

7

103 (3d Cir. April 28, 2020) (citing Jaludi v. Citigroup, 933 F.3d 246, 254 (3d Cir. 2019).

State law governs these gateway determinations. Id. (citing Jaludi, 933 F.3d at 254–55 and In re Remicade (Direct Purchaser) Antitrust Litig., 938 F.3d 515, 522 (3d Cir. 2019)).  The parties may assign the resolution of these issues to an arbitrator.  Id. (citing Opalinski v. Robert Half Int'l Inc., 761 F.3d 326, 335 (3d Cir. 2014).  But such a delegation "requires 'clea[r] and unmistakabl[e]' evidence of the parties' intent [to do so]."  Id. (citing First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944 (1995)).

The initial gateway issue of whether a valid arbitration agreement exists is determined by the principles of state contract law.  Hutt v. Xpressbet LLC, 2020WL2793920, *5 (E.D. Pa. May 29, 2020) (citing China Minmetals Materials Imp. & Exp. Co. v. Chi Mei Corp., 334 F.3d 274, 290 (3d Cir. 2003)).  "Under Pennsylvania law, the party seeking arbitration bears 'the burden of demonstrating that a valid agreement to arbitrate exists between the parties.'"  Id. (quoting Goldstein Depository Trust Co., 717 A.2d 1063, 1067 (Pa. Super. Ct. 1998)).  That burden is satisfied "only where it is clear that the parties have agreed to arbitrate in a clear and unmistakable manner."  Id. (quoting Quiles v. Fin. Exch. Co., 879 A.2d 281, 287 (Pa. Super. Ct. 2005)).  Establishing such an agreement requires a showing that (1) the parties expressed a manifest intent to be bound by the agreement; (2) its terms are sufficiently definite to be enforced; and (3) there was consideration.  Id. (citing Blair v. Scott Specialty Gases, 283 F.3d 595, 603 (3d Cir. 2002) (applying Pennsylvania law)).

The first gateway question is focused on the validity of the arbitration provision itself; challenges to other provisions in the contract or to the contract as a whole do not prevent the enforcement of the arbitration clause.  See Rent-A-Center, West, Inc. v. Jackson, 561 U.S. 63, 70-71 (2010) (only challenges to the validity of the agreement to arbitrate are examined by a

court in deciding the gateway questions to enforceability; "a party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate."); accord South Jersey Sanitation Co. v. Applied Underwriters, 840 F.3d 138, 143 (3d Cir. 2016) ("only an arbitration provision-specific challenge is relevant to a court's determination whether the arbitration agreement at issue is enforceable.  If the challenge encompasses the contract as a whole, the validity of that contract, like all other disputes arising under the contract, is a matter for the arbitrator to decide.") (quoting Rent-A-Center, 561 U.S. at 70).  Unless specifically limited to the arbitration clause, challenges to enforceability based on defenses such as fraud or illegality of contract under state law are challenges to the contract as a whole.  South Jersey Sanitation, 840 F.3d at 144-46.

Here, the record demonstrates that Chester Duffy executed a valid and enforceable agreement to arbitrate.  Chester signed the last page of the LPL Financial application after it was presented by Devlin for his signature.  Chester signed it with the understanding that it would be used by LPL Financial to open an account through which LPL Financial would receive the funds to acquire the annuity being recommended by Devlin.  He also understood that LPL Financial would then transfer those funds to AIG Capital Services and acquire the recommended investment instrument.  LPL Financial received the funds, transferred them and purchased the Annuity as previously represented by Devlin and as contemplated by both parties.

The single page presented to Chester for authority to open the LPL Financial account contained two important provisions.  The first was the arbitration clause highlighted above.  It made clear that in opening the LPL Financial account both parties were agreeing to a pre-dispute arbitration provision.  This clause was at the top of the signature page and would be the

first thing an individual would read when reviewing the signature page for endorsement. The second clause was a penalty of perjury clause relating to the accuracy of the information provided by the applicant. Each of these provisions were conspicuous placed directly above the signature line for the applicant(s).

Chester's signing the application to open the 3518 account with LPL Financial for the purpose of purchasing the Annuity and the subsequent purchasing of the same reflect that the parties had a manifest intent to execute the application and create the 3518 account for the purpose of completing the transaction. The signature page explicitly identified a pre-dispute arbitration provision and specifically identified where a full copy of the terms could be reviewed. It further indicated that the arbitration provision was being incorporated into the application. Each party changed their legal position by executing the application and purchasing the Annuity. These undisputed facts reflect mutual manifest intent, specifically sufficient terms and adequate consideration for the purpose of enforcement of the arbitration clause under Pennsylvania law.

Plaintiffs' protestations to the contrary are unavailing. First, the fact that Chester did not sign the Master Agreement and his signature on that document purportedly was forged does not change the fact that he signed the application to create the 3518 account. And the page he did sign in that application contained a conspicuous provision incorporating a pre-dispute arbitration clause. In doing so he understood that the 3518 account would be used by LPL Financial to receive the funds and acquire the recommended investment instrument. The facts that 1) he did not sign the Master Agreement, 2) he did not receive or demand a copy of it when he signed the 3518 application, and his signature on the Master Agreement was forged are facts that create defenses to the whole of the agreement. As such, the impact of these

allegations/facts are matters for the arbitrator to consider and do not create an impediment to enforcing the arbitration agreement created by Chester's signature on the last page of the application for the 3518 account.

Similarly, the fact that the application only referenced and incorporated the substantive provisions of the arbitration clause in the master agreement does not render the agreement formed through the execution of the application unenforceable.  Pennsylvania law recognizes the principle of "incorporation by reference" where "the underlying contract makes clear reference to a separate document, the identity of the separate document may be ascertained, and incorporation of the document will not result in surprise or hardship."  Jesmar Energy, Inc. v. Range resources-Appalachia, LLC, 2018 WL 1471978, *5 (W.D. Pa., March 26, 2018) (quoting Chesapeake Appalachia, LLC v. Scout Petroleum, LLC, 809 F.3d 746, 760-61 (3d Cir. 2016)).  Arbitration clauses can be incorporated by reference like any other contractual provision.  See Century Indemnity Company v. Certain Underwriters at Lloyd's London, 584 F.3d 513, 555 (3d Cir. 2009) (arbitration provision contained within three reinsurance contracts incorporated by reference into three corresponding retrocessional agreements); GGIS Insurance Services, Inc. v. Lincoln General Insurance Company, 773 F. Supp. 2d 490, 499 (M.D. Pa. 2011) (personal guaranty signed by a CEO in his personal capacity incorporated by reference the arbitration clause contained within the agreement between the underlying entities); Aurum Asset Managers, LLC v. Banco Do Estado Do Rio Grande Do Sul, 2010 WL 4027382, *6 (E.D. Pa. Oct. 13, 2010) ("Arbitration provisions are generally enforced through incorporation by reference in cases . . . where the non-signatory is expressly referenced in the contract containing the arbitration clause or the contract containing the clause is clearly adopted by another document.").

11

These standards are easily met here.  The application contained a clear reference to the pre-dispute arbitration clause in the account agreement.  The terms of the arbitration clause were readily ascertainable by consulting the account agreement.  And the application clearly stated that the terms were being incorporated by the executing parties.  Chester's and Michele's subsequent distain for a provision that was conspicuously presented on the signature page of the application for account 3518 does not raise a basis for finding undue surprise or hardship.  See In re Olson's Estate, 291 A.2d95, 98 (Pa. 1972) (In the absence of fraud, "failure to read is an unavailing excuse or defense and cannot justify an avoidance, modification or nullification of the contract or any provision thereof.") (collecting cases).[1]

Michele Duffy signed an identical application page in conjunction with the couple's opening of a joint account with LPL Financial.  That application and its identical arbitration clause created an enforceable arbitration provision between Michele Duffy and defendants for essentially the same reasons.

Having determined that each plaintiff entered into an enforceable arbitration agreement with defendants LPL Financial and Devlin, the inquiry turns to the second gateway question: whether the current dispute is within the scope of the arbitration agreement.  Like the first step, "general state-law principles of contract interpretation" supply the applicable standards at the second step, but "due regard" is to be given to "the federal policy favoring arbitration."  In re Remicade (Direct Purchaser) Antitrust Litig., 938 F.3d 515, 520 (3d Cir. 2019) (quoting Jaludi v. Citigroup, 933 F.3d 246, 255 (3d Cir. 2019)).  In determining "whether a particular dispute

---

[1]  Plaintiffs' allegations of fraud go to the content of the Annuity and a forged signature on Master Account Agreement 3518, not to the application for that account, which is all that is being considered in deciding the gateway questions for arbitration.

falls within the scope of an arbitration clause," the labels and/or legal theories counsel has attached to the claims are not controlling; instead, the "'focus [is ] on the factual underpinnings of the claim.'" Medversant Techs., LLC v. Leverage Health Sols., LLC, 114 F. Supp.3d 290, 297 (E.D. Pa. 2015) (quoting CardioNet, Inc. v. Cigna Health Corp., 751 F.3d 165, 173 (3d Cir. 2014)).

     The arbitration clause in question covers "any controversy between you and LPL and/or your Representative(s) (whether or not a signatory(ies) to this Master Account Agreement or Arbitration Agreement), arising out of or relating to your account, transaction with or for you, or the construction, performance, or breach of this agreement . . .. "  Given the breadth of this provision, the presumption in favor of arbitration is "particularly applicable."  See Battaglia v. McKendry, 233 F.3d 720, 725 (3d Cir. 2000) (where the parties have agreed to an arbitration clause, "there is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'") (quoting AT&T Technologies, Inc., v. Communications Workers of America, 475 U.S. 643, 650 (1986)).   Pursuant to that presumption, if the plaintiff's allegations giving rise to the claims "touch matters" covered by the arbitration clause, "those claims must be arbitrated," regardless of whether they are presented as causes of action in contract or tort.  Brayman Constr. Corp. v. Home Ins. Co., 319 F.3d 622, 626 (3d Cir. 2003) (internal quotation marks and citation omitted).

     Plaintiffs' allegations giving rise to their claims clearly touch on matters covered by the arbitration clauses.  The allegations fall squarely within the arbitration provision incorporated into the 3518 account application.  The claims are predicated on the circumstances under which

the Annuity was purchased and the representations that were made in conjunction therewith;
and, in contrast, the actual terms, operation and quality of the Annuity as delivered upon
purchase.  Chester agreed to arbitrate any claims against LPL Financial and its representatives
"arising out of or relating to [the 3518] account, transaction with or for [him], or the []
performance, or breach of this agreement . . . ."  It follows that the claims are at the heart of the
arbitration agreement Chester entered as part of authorizing LPL Financial and Devlin to
purchase the Annuity for the benefit of plaintiffs.

  The arbitration agreement attached to plaintiffs' joint Master Account likewise reaches
the claims advanced by Michele Duffy.  LPL Financial and Devlin's purchase of the Annuity
constituted the purchasing of an investment instrument by LPL Financial and its representative
that was a "transaction with or for [Michele and/or plaintiffs]."  As such, the allegations
underlying plaintiffs' claims fall within the scope of the arbitration clause incorporated into the
application for their Master Account.  And it follows that the claims as advanced by Michele
Duffy must be sent to arbitration pursuant to the arbitration clause in the application to that
account.

  For the reasons set forth above, the gateway questions to arbitration must be answered
in favor of sending plaintiffs' claims against LPL Financial and Devlin to arbitration.  As a
result, these defendants' motion for a stay and to compel arbitration will be granted.  An
appropriate order will follow.

Date: November 30, 2020

         s/David Stewart Cercone
         David Stewart Cercone
         Senior United States District Judge

cc:     Michael J. Betts, Esquire
        Erin Vuljanic, Esquire
        Michael P. Leahey, Esquire
        Sylvia Nichole Winston, Esquire
        Andrew J. Dorman, Esquire

        (*Via CM/ECF Electronic Mail*)

15