IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

**CHESTER DUFFY** and **MICHELE DUFFY**,  )
)
Plaintiffs,  )
)
v.  )   2:19cv1490
)   **Electronic Filing**
**AMERICAN GENERAL LIFE INSURANCE COMPANY, AIG CAPITAL SERVICES, INC., LPL FINANCIAL LLC, STEPHEN J. AVERY** and **PATRICK B. DEVLIN**,  )
)
Defendants.  )

## MEMORANDUM ORDER

AND NOW, this 30th day of November, 2020, upon due consideration of defendants American Life Insurance Company, AIG Capital Services, Inc. and Stephen J. Avery's (collectively "defendants") motions to dismiss and the parties' submissions in conjunction therewith, IT IS ORDERED that [24], [26] the motions be, and the same hereby are, denied.

The grounds advanced in support of the motions are unavailing.  First, the Annuity in question is an instrument subject to regulation under the federal laws governing public securities. See Lander v. Hartford Life & Annuity Ins. Co., 251 F.3d 101, 105 (2d Cir. 2001) ("Variable annuities must be registered with the SEC as securities under the Securities Act of 1933, codified at 15 U.S.C. § 77a et seq.") (citing SEC v. Variable Annuity Life Ins. Co., 359 U.S. 65, 69–73 (1959)).  "While variable annuities are primarily sold by insurance companies, the policies must be offered through 'separate accounts.'  These separate accounts must be registered with the SEC as investment companies under the Investment Company Act of 1940, codified at 15 U.S.C. § 80a–1 et seq." Id. (citing Prudential Ins. Co. of Am. v. SEC, 326 F.2d 383 (3d Cir.), cert. denied, 377 U.S. 953 (1964)).  As succinctly noted by defendants LPL Financial and Devlin, "[i]n the

Complaint, Plaintiffs correctly point out that [a]t all relevant times, the [Annuity] was a security subject to the federal securities laws . . . ." Reply Brief in Support of Motion to Stay and Compel Arbitration (Doc. No. 41) at p.8. Thus, defendants' attempt to avoid the reach of the securities laws through the exception for insurance products falls short.

Second, the economic loss doctrine does not bar plaintiffs' statutory claim under Pennsylvania's Unfair Trade Practices and Consumer Protection Law or their fraud and negligence claims. The Supreme Court of Pennsylvania has clarified on multiple occasions that the economic loss doctrine, while an operative feature of Pennsylvania jurisprudence, does not operate to bar claims simply because they seek to recover purely economic loss. See Dittman v. UPMC, 196 A.3d 1036, 1054 (Pa. 2018); Bruno v. Erie Ins. Co., 106 A.3d 48, 69 (Pa. 2014). Instead, Pennsylvania employs an analysis that focuses on the nature of the duty alleged to have been breached in identifying the demarcation between various causes of action that may be advanced in a civil action. And in drawing distinctions between claims that may progress at the pleading stage under various causes of action, the allegations comprising the claims in a plaintiff's complaint are of paramount importance. Bruno, 106 A.3d at 68, 69.

While the United States Court of Appeals for the Third Circuit has yet to clarify the impact that these recent cases by the Supreme Court of Pennsylvania have had on the Circuit's prior opinions applying the economic loss doctrine, we believe the reasoning employed by the courts in cases such as Hollenshead v. New Penn Financial, LLC, 447 F. Supp.3d 283 (E.D. Pa. 2020), reflect the better view. See id. at 289-90 (declining to employ the economic loss doctrine to dismiss a UTPCPL claim at the pleading stage) (collecting cases in support). The source of the duties imposed by the UTPCPL is statutory and those duties seek to regulate matters that the General Assembly deemed to be of public importance. Consequently, the attempt to gain dismissal of this claim through application of the economic loss doctrine is misplaced.

Court's have reached a similar conclusion as to claims of misrepresentation and fraud. See Mendelsohn, Drucker & Associates v. Titan Atlas Mfg., Inc., 885 F. Supp.2d 767, 790 (E.D. Pa. 2012) ("this Court will avoid any categorical application of the gist of the action doctrine, engaging instead in a fact-intensive analysis of the parties' conduct in relation to the fraud alleged. Where the alleged fraud induced the plaintiff to continue under a contract with the defendant, judges in this district have refused to dismiss the claim under the gist of the action doctrine.") (collecting cases); Sheridan v. Roberts Law Firm, 2019 WL 6726469, *4 (E.D. Pa. Dec. 11, 2019) (declining to dismiss fraudulent and negligent misrepresentation claims at the pleading stage based on the growing authority recognizing the general duty of honesty imposed as a social duty and the duty created under Restatement (Second) of Torts § 552 placed upon those who supply information for the guidance of others in the course of a business transaction); cf. Bruno v. Erie Insurance Co., 106 A.3d 48, 71 (Pa. 2014) (reversing order of the Superior Court dismissing a complaint pursuant to the economic loss doctrine where an agent of the carrier was alleged to have acted in a negligent manner by making false assurances on the ground that the "allegations of negligence facially concern [the carrier's] alleged breach of a general social duty, not a breach of any duty created by the insurance policy itself. The policy in this instance merely served as the vehicle which established the relationship between the [plaintiffs] and [the carrier], during the existence of which [the carrier] allegedly committed a tort."). Applying this line of authority, nothing in plaintiffs' allegations support a determination that their fraudulent and misrepresentation claims should be dismissed at the pleading stage.

Defendants' efforts to avail themselves of the statute of limitations based on the filing of the complaint likewise are wide of the mark. In general, the Federal Rules of Civil Procedure require an affirmative defense such as the statute of limitations to be pled in a defendant's answer. See Robinson v. Johnson, 313 F.3d 128, 135 (3d Cir. 2002) (Technically, "a limitations

defense must be raised in the answer, since Rule 12(b) does not permit it to be raised by motion."). Nevertheless, "the law of this Circuit (the so-called 'Third Circuit Rule') permits a limitations defense to be raised by a motion under Rule 12(b)(6), but only if 'the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations.'" Id. (quoting Hanna v. U.S. Veterans' Admin. Hosp., 514 F.2d 1092, 1094 (3d Cir. 1975)). But "[i]f the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)." Id. (quoting Bethel v. Jendoco Constr. Corp., 570 F.2d 1168, 1174 (3d Cir. 1978)); accord, Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014) ("when 'the pleading does not reveal when the limitations period began to run . . . the statute of limitations cannot justify Rule 12 dismissal.") (quoting Barefoot Architect, Inc. v. Bunge, 632 F.3d 822, 835 (3d Cir. 2011)).

In response to defendants' assertion that the affirmative defense is established in the complaint, plaintiffs raise both the discovery rule and the fraudulent concealment component of equitable tolling. In Pennsylvania, "[t]he discovery rule is a judicially created device which tolls the running of the applicable statute of limitations until the point where the complaining party knows or reasonably should know that he has been injured and that his injury has been caused by another party's conduct." Schmidt, 770 F.3d at 249 (quoting Crouse v. Cyclop Industries, 745 A.2d 606, 611 (Pa. 2000)). Under this rule "the point at which the complaining party should reasonably be aware that he has suffered an injury is a factual issue 'best determined by the collective judgment, wisdom and experience of jurors.'" Crouse, 745 A.2d at 611 (quoting White v. Owens–Corning Fiberglas Corp., 668 A.2d 136, 144 (Pa. Super. 1995), appeal denied, 683 A.2d 885 (Pa. 1996). "Thus, once the running of the statute of limitations is properly tolled, only where the facts are so clear that reasonable minds cannot differ may the commencement of the limitations period be determined as a matter of law." Id.

4

The plaintiff generally bears the burden of showing that the discovery rule tolls the statute of limitations.  See Dalrymple v. Brown, 701 A.2d 164, 167 (Pa. 1997).   Nevertheless, "while a court may entertain a motion to dismiss on statute of limitations grounds, Robinson, 313 F.3d at 135, it may not allocate the burden of invoking the discovery rule in a way that is inconsistent with the rule that a plaintiff is not required to plead, in a complaint, facts sufficient to overcome an affirmative defense."  Schmidt, 770 F.3d at 249 (citing In re Adams Golf, Inc. Sec. Litig., 381 F.3d 267, 277 (3d Cir. 2004) and Doe v. GTE Corp., 347 F.3d 655, 657 (7th Cir. 2003) ("[L]itigants need not try to plead around defenses")); accord Buttolph v. PrimeCare Med. Inc., 2018 U.S. App. LEXIS 26636, *3 (3d Cir. September 19, 2018) (citing Stephens v. Clash, 796 F.3d 281, 288 (3d Cir. 2015)).

Plaintiffs invoke the array of asserted facts comprising the purported misrepresentations by Avery and Devlin, both at the time the transaction leading to the purchase of the Annuity was initiated and at a subsequent meeting in July of 2017.  They further alleged they first learned that the Annuity did not operate as purportedly represented pursuant to discussions with Avery and Devlin in May and June of 2018.  Devlin then provided a written statement confirming that the specific misrepresentations previously had been made by him and Avery.

Reading the factual allegations of the complaint in the light most favorable to plaintiffs, it cannot be said that plaintiffs have pled themselves out of court.  An analysis of what plaintiffs knew or must be deemed to have known, when they knew or should have known it and when a reasonable person would have discovered the alleged injury and defendants' role in it under the reasonable diligence standard and any applicable corollaries must await further development of the record.  See In re Community Bank of Northern Virginia Mortg. Lending Practices Litigation, 795 F.3d 380, 404 (3d Cir. 2015) ("A plaintiff ... cannot be expected to exercise diligence unless there is some reason to awaken inquiry and direct diligence in the channel in

5

which it would be successful. This is what is meant by reasonable diligence.") (quoting Sheet Metal Workers, Local 19 v. 2300 Grp., Inc., 949 F.2d 1274, 1282 (3d Cir. 1991); Knopick v. Connelly, 639 F.3d 600, 611 (3d Cir. 2011) ("Reasonable diligence is an objective test, but it is also 'sufficiently flexible to take into account the differences between persons and their capacity to meet certain situations and the circumstances confronting them at the time in question.'") (quoting Kach v. Hose, 589 F.3d 626, 641 (3d Cir. 2009)).

Finally, the court will not dismiss plaintiffs' negligent supervision claims at this juncture. Plaintiffs have alleged that Avery and Devlin were acting within the scope of their respective principle-agency relationships. Defendant are correct in their insistence that a negligent supervision claim in the instant setting is designed to afford a remedy where the doctrine of *respondeat superior* is unavailable. See Belmont v. MB Investment Partners, Inc., 708 F.3d 470, 489 (3d Cir. 2013) (A claim for negligent supervision "provides a remedy for injuries to third parties who would otherwise be foreclosed from recovery under the principal-agent doctrine of *respondeat superior* because the wrongful acts of employees in these cases are likely to be outside the scope of employment or not in furtherance of the principal's business."); accord Sherman v. John Brown Ins. Agency, Inc., 38 F. Supp.3d 658, 669 (W.D. Pa. 2014) ("To state a claim for negligent supervision, a plaintiff must allege: (1) a failure to exercise ordinary care to prevent an intentional harm by an employee acting outside of the scope of his employment; (2) that is committed on the employer's premises; (3) when the employer knows or has reason to know of the necessity and ability to control the employee.") (citing Belmont, 708 F.3d at 487-88)). Nevertheless, plaintiffs are entitled to maintain such a claim in the alternative to their main theory provided they recognize that recovery cannot be had under both approaches. Plaintiffs have acknowledged as much by requesting that the claims be read that way and not dismissed until defendants answer the complaint. See Plaintiffs' Response in Opposition (Doc. No. 38) at

23. Based on this acknowledgement, the court will deem the applicable negligent supervision count to plead that the conduct of Avery was outside the principle-agency relationship he had with AIG Capital Services, Inc. and/or General Life Insurance Company.

For the reasons set forth above, defendants' motions properly have been denied.

s/David Stewart Cercone
David Stewart Cercone
Senior United States District Judge

cc: Michael J. Betts, Esquire
Erin Vuljanic, Esquire
Michael P. Leahey, Esquire
Sylvia Nichole Winston, Esquire
Andrew J. Dorman, Esquire

(*Via CM/ECF Electronic Mail*)